UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-282-H

MONIKA BURKHEAD, et al.                                    PLAINTIFFS

V.

LOUISVILLE GAS & ELECTRIC CO.                             DEFENDANT

**MEMORANDUM OPINION**

Plaintiffs are all residents of areas surrounding a power plant operated by Louisville Gas & Electric ("LG&E"), who have filed suit against Defendant seeking monetary and injunctive relief for damage allegedly resulting from fallout and noxious odors emitted by that facility. Specifically, Plaintiffs proceed under theories of nuisance, negligence and/or gross negligence, strict liability for ultrahazardous activities, and trespass.

Currently before the Court is Plaintiffs' motion for class certification, which Defendant has opposed. The parties have briefed the issue and on March 3, 2008 the Court heard oral arguments. Deciding issues of class certification in cases such as this inevitably involves the exercise of care, judgment and appropriate discretion. The Court has attempted to employ proper doses of each and, at every turn, to clearly explain its reasoning. This consideration should not be viewed as a proxy for any decision on the merits of Plaintiffs' claims.

Having considered the briefs, oral arguments, and evidentiary record, the Court finds Plaintiffs' motion to be deficient in several significant ways, and therefore, the Court will deny the motion.

I.

Named Plaintiffs, over seventy (70) residents of an area near LG&E's Louisville, Kentucky facility, have alleged that emissions from LG&E's operations in the plant have invaded their property in the form of particulate matter ("fallout") and noxious odors. The Court must take as true their testimony about the nature of the fallout on their property, but cannot give particular credence to a belief that any aspect of the fallout came from the LG&E plant. This would be for others with more specialized knowledge to suggest.

Plaintiffs characterize the fallout blanketing their property variably as black ash, grey ash, black dust, black grit, black soot, sticky black material, white dust, white ash, white powder, yellow-green powdery substance, an oily film, or a syrupy or brine-like substance. Descriptions of the odors are similarly varied and include burnt rawhide, dirty gym socks, acid, a burning smell, sweet/foul, formaldehyde, burned electrical wire, vinegary, burning hard plastic, barnyard, fingernail polish remover, burning rubber, fish, sewer, sulfur, ammonia, chlorine, cod liver oil, horse manure, skunk, glue, mildew, mold, gas, rotten eggs, garbage, bleach, and urine. Plaintiffs' Memorandum in Support of Motion for Certification of Class Action, Exhibit 3.

Plaintiffs seek certification under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure of a class defined as follows:

> Owners or residents of single family residences within two miles of the LG&E Cane Run facility, whose property was damaged by noxious odors, fallout, pollutants and contaminants which originated from the LG&E Cane Run facility located in Louisville, Kentucky and who have owned or resided at that single family residential home from May 9, 2003 to the present and continuing.

2

Plaintiffs' Motion for Certification of Class Action at ¶ 3.  Plaintiffs estimate that this class may consist of as many as 14,294 people or more, and assert that for this and other reasons, the requirements of Rules 23(b)(2) and 23(b)(3) are met.

LG&E is an electric and natural gas utility.  LG&E's Cane Run facility is a 510-acre coal-fired electrical generating plant.  As part of its operations at the plant, LG&E burns approximately 1.3 million tons of coal annually and stores piles of coal on-site.  The coal combustion process causes emissions from the plant's smokestacks which Plaintiffs allege have carried hazardous materials onto their property in the form of odors and particulate matter.[1] LG&E has opposed class certification, arguing among other things that the proposed class definition is flawed, that the proposed class representatives do not raise claims typical of those of the class, and that individual issues will predominate over common ones, making Plaintiffs' claims unsuited for class adjudication.

II.

The Court recently had an opportunity to consider the issue of class certification in a very similar case also litigated by Plaintiffs' counsel.  *Brockman v. Barton Brands, Ltd.*, 2007 WL 4162920 (W.D. Ky. Nov. 21, 2007).  In that case, the Court denied certification of a proposed class defined in essentially the same manner as the one currently before the Court.

At oral argument on the instant motion, the Court solicited the opinions of Plaintiffs' and LG&E's counsel as to the validity of the Court's analytic framework in *Brockman*.  Neither side took issue with that framework or sought to dispute the applicability of the precedents to which the Court referred therein.  Therefore, the Court has adopted a similar approach to that used in

---

[1]In addition to the "fallout" allegedly emitted by LG&E, coal dust from the coal piles maintained by LG&E at the facility has also allegedly entered Plaintiffs' property.

*Brockman*.  The authorities referred to in *Brockman* will often appear below, and at times the Court's language will track *Brockman* verbatim.  The Court has expanded and improved on its approach, but any differences in the Court's language here should not be taken to imply divergence with the basic approach set forth in *Brockman*.  In short, the Court acknowledges and addresses the factual dissimilarities between *Brockman* and the instant facts and while the Court intends that the discussion below stand on its own as an analysis of the relevant legal principles, similarities in approach are inevitable.

III.

A district court has broad discretion in determining whether class certification is appropriate, *Sterling v. Velsicol Chem. Corp*., 855 F.2d 1188, 1197 (6th Cir. 1988), but in arriving at that determination the court has no authority to "conduct a preliminary inquiry into the merits of a suit."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  The likelihood that these individual plaintiffs may have valid claims is not relevant to class certification.  However, "sometimes it is necessary for the court to probe behind the pleadings before coming to rest on the certification question."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also* Manual for Complex Litigation (Fourth) § 21.14 (2004).   As such, the Court must conduct a "rigorous analysis" to determine whether the requirements of Rule 23 are met.  *Falcon,* 457 U.S. at 161.  Plaintiffs have the burden to prove the requisite elements of class certification under either or both of Rules 23(b)(2) and (b)(3).  *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Falcon*, 457 U.S. at 161).

To meet the requirements of Rule 23(a):  (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class;

4

(3) the claims or defenses of the representative parties must be typical of the claims or defenses

of the class; and (4) the representative parties must fairly and adequately protect the interests of

the class. *Olden v. LaFarge Corp.,* 383 F.3d 495, 507 (6th Cir. 2004) (citing Fed R. Civ. P.

23(a)).  Once certified, a class may be altered, expanded, subdivided, or even vacated.  *See* Fed.

R. Civ. P. 23(c)(1), 23(c)(4)(B).  But again, plaintiffs carry the burden to plead a sufficient basis

for certification.  *Tucker v. Union Underwear Co., Inc.,* 144 F.R.D. 325, 327 (W.D. Ky. 1992)

(citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976)).

This Court will address each Rule 23(a) requirement in turn, after considering an

overriding concern particular to the type of class proposed here.

A.

"Although not specifically mentioned in [Rule 23], the definition of the class is an

essential prerequisite to maintaining a class action." *Adams v. Fed. Materials Co.,* 2006 WL

3772065 at *3 (W.D. Ky. 2006) (quoting *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 335 (E.D.

Ky.2002)); *see also Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004)

("Before delving into the 'rigorous analysis' required by Rule 23, a court first should consider

whether a precisely defined class exists and whether the named plaintiffs are members of the

proposed class").  At a minimum, the description must be "sufficiently definite that it is

administratively feasible for the court to determine whether a particular individual is a member."

7A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure*, §

1760, at 120-21 (2d ed.1986).

As this Court discussed in *Brockman*, courts have rejected proposed classes where

plaintiffs failed to "identify any logical reason . . . for drawing the boundaries where they did."

5

*Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602–03 (D. Colo. 1990) (holding that plaintiffs had "failed to identify a class" where the proposed boundaries did not appear to "relat[e] to the defendants' activities," but were instead "arbitrarily . . . drawn lines on a map"). Usually, scientific or objective evidence closely ties the spread of the alleged pollution or contamination to the proposed class boundaries, as many mass environmental tort cases demonstrate. In weighing certification of a proposed class claiming damage from airborne radioactive materials, one court observed:

> [t]he fact that radioactive materials have escaped the confines of the plant, is, by itself, not sufficient to justify defining the class to include everyone who lives or owns property within six miles of the plant's boundaries. Although the class definition is subject to refinement . . . there should be some evidence at this stage of the case that plaintiffs' definition is reasonable. *This requires an examination of the plaintiffs' evidence of the dispersion of hazardous emissions*.

*Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 61–62 (S.D. Ohio 1991) (emphasis added). In *Boggs,* the plaintiffs supported their proposed class with expert testimony that the released radioactive materials spread to at least a six-mile radius. *Id.* This expert testimony demonstrated that the level of exposure within the radius would differentiate plaintiffs from "more distant members of the public," and that therefore, the six-mile radius class definition bore a "reasonable relationship to the evidence of record." *Id.* at 62. The *Boggs* court made clear it was not seeking evidence regarding "the amount and effect of [contaminant] dispersion," but merely "evidence that the plant has discharged [contaminants] beyond its borders," as well as evidence that "those substances [had] traveled up to six miles," which would allow the court to conclude that there was such a "reasonable relationship" and that the "definition of the class is sufficiently definite to permit analysis of the Rule 23 factors." *Id.* at 61–62.

6

Elsewhere, plaintiffs seeking recovery from alleged dioxin pollution limited their proposed class to those persons within "'confirmed dioxin sites' as described in the final report of the Missouri Dioxin Task Force." *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 643 (N.D. Cal. 1987). The district court expressly refrained from "ruling on the validity" of the Task Force's determination of dioxin exposure (a merits issue), but could be confident that the class definition was appropriate given the determination, as in *Boggs*, that a contaminant from the defendant's activities had at least potentially caused the complained-of harm. *Id.* at 644.

More recently, a Colorado district court approved a class of property owners within a defined "plutonium contour," modeling its inquiry on *Boggs* and finding that by virtue of this defined contour, the proposed class definition was distinguishable from the seemingly arbitrary boundaries proposed in *Daigle*. *Cook v. Rockwell Intern. Corp.*, 151 F.R.D. 378, 383–84 (D. Colo. 1993). And similarly, in *LaBauve v. Olin Corp.,* 231 F.R.D. 632, 638 (S.D. Ala. 2005), the court certified a subclass based on scientific air dispersion modeling that indicated a fixed geographical zone of a chemical plant's airborne contaminants.

By contrast, courts have declined to certify proposed classes where "no evidence establishes a connection between defendants' conduct and the proposed class boundaries." *See, e.g. Daigle,* 133 F.R.D. at 602-03; *Duffin v. Exelon Corp.*, 2007 WL 845366 (N.D. Ill. March 19, 2007) (denying certification of a proposed class alleging damage from release of hazardous tritium because the proposed class was defined in "geographic terms unrelated to actual tritium contamination . . . . [since] there was no probative evidence of class-wide contamination

justifying a 25 square mile class encompassing over 2,500 properties and 6,500 residents").[2] And courts have resisted class certification where plaintiffs fail to consider facts such as wind and water runoff in defining the class. *See, e.g., Blake v. Chemlawn Svcs. Corp.*, 1998 WL 6151 (E.D. Pa. 1998); *Reilly v. Gould, Inc.,* 965 F. Supp. 588, 597 (M.D. Pa. 1997).

As noted above, Rule 23 does not explicitly command evaluation of the proposed class definition, which explains why many courts have opted not to perform such an evaluation. *See, e.g., Olden v. LaFarge Corp.*, 203 F.R.D. 254 (E.D. Mich. 2001). The Sixth Circuit has not deemed the failure to conduct such an evaluation to be an abuse of discretion. *Olden*, 383 F.3d 495. Neither has the Sixth Circuit criticized the more thorough approach. As it noted in *Brockman*, this Court believes the more thorough analysis to be the better approach.

The Court has repeatedly pressed for an evidentiary relationship between the geographic boundaries of the proposed class definition and the alleged exposure zone of pollution. Yet at bottom, Plaintiffs rest their motion upon complaints of residents in a single, geographically-confined area about various substances and odors on their property, and lengthy recitals of the emissions of the LG&E facility. Plaintiffs have presented no evidence from which the Court could infer that similar circumstances, whether ultimately attributable to LG&E or not, exist throughout the proposed two mile radius of LG&E's facility class area. Though Plaintiffs repeatedly describe the proposed class definition as "objectively reasonable," they offer no evidence whatsoever that the airborne contaminants might have spread in all directions from

---

[2]In *Duffin*, the district court noted that "Plaintiffs have failed to provide evidence that tritium contamination is present throughout the class area," *id.* at *5, and expressly distinguished between a determination that property damage had occurred (a merits issue) and a determination that properties in the class area were even potentially contaminated. *Duffin*, 2007 WL 845336, at *3–5.

8

LG&E's facility for a distance of up to two miles.[3]  Plaintiffs had an ample opportunity for class discovery, and had the benefit of this Court's feedback on at least two other similar cases.  Yet Plaintiffs' request for class certification contains a startling and near-total lack of evidence linking the fallout and/or odors about which Plaintiffs complain to the substances that LG&E emits, such as was present, for example, in *Boggs*.

Notably, Plaintiffs have not provided an expert report, as was provided in *Brockman*. Instead, the entirety of Plaintiffs' scientific evidence appears to consist of a three-page (including cover sheet) analysis of two samples Plaintiffs assert they collected and sent to a lab. Plaintiffs' Memorandum in Support of Motion for Certification of Class Action, Exhibit 16.  As scientific or expert evidence, the lab report is extraordinarily lacking in relevant information. Among other things, the lab analysts were not those who collected the samples, and the "Conclusions" proffered by the lab analysts apparently were primarily that the samples contained "plant matter and mold" as well as "environmental dust," none of which seems to indicate the presence of any contaminant, much less one that could be attributed to a coal-fired plant such as LG&E's.  The substance discovered in the samples which Plaintiffs argue supports their theory is "organic black particulate consisting of a mixture of carbonized material, rubber dust, and *possibly* coal dust (a minor component in the mixture)."  *Id.* (emphasis added).  And it is from this result and the extensive documentation of LG&E's emissions that Plaintiffs ask the Court to

---

[3]Though less important at the certification stage, the Court notes that Plaintiffs also do not explain how the proposed two-mile-radius class area takes into consideration many if not all of the proposed class members' proximity to other pollution-emitting facilities in the area, including Oxy Vinyl, a nearby coal-fired facility also being sued by Plaintiffs' counsel.  Here again, any sort of evidentiary assurance that a particular pollutant from LG&E could have spread across the proposed class area would be helpful, but has not been provided.

accept that "the complaints against Defendant's odors and fallout affect citizens throughout the *Burkhead* class definition geographic area commonly and predominantly." *Id.* at 5.[4]

To be clear, the Court is not troubled by the lack of such evidence merely because the Court fears individualized or non-uniform damage calculations, but rather because without it there seems to be virtually no evidence in the record that distinguishes members of the proposed class from the general public based upon acts of LG&E.  *See Bentley,* 233 F.R.D. at 479 (S.D. Ohio 2004) (citing *Boggs*, 141 F.R.D. at 60).  The omission of any sort of meaningful scientific evidence tying the proposed class together is particularly glaring given that Plaintiffs' counsel have at least attempted to obtain such information in other similar cases, and given how frequently such information plays a key role in class certification decisions for other courts in such cases.  The geographically-concentrated questionnaires Plaintiffs proffer may be evidence of similar harm as to a specific geographic area, but they are not helpful for certification of a class extending well beyond that area.  The questionnaires fall well short of supporting an inference that individuals elsewhere in the sizeable proposed class area have suffered from similar circumstances.

Additionally, Plaintiffs' proposed class definition limits membership to those "whose property was damaged by noxious odors, fallout, pollutants and contaminants which originated from the LG&E Cane Run facility."  This definition seems to make the ultimate issue in the case (property damage at the hands of LG&E) a component of the class *definition*, thereby front-

---

[4]Interestingly, Plaintiffs did have additional testing performed.  They apparently sent a sample of material collected on Plaintiff Burkhead's property to the same lab which analyzed the samples to which they refer in their Memorandum.  Defendant's Response at 6.  The lab found only "a mixture of natural cellulose, plant matter, wood fragments, quartz, and clays" in the sample.  Defendant's Response, Exhibit C at 2.  This result's utter lack of support for Plaintiffs' theory may explain why Plaintiffs fail to mention this test in their briefing, though the lab's report on this sample includes substantially more information than the report to which Plaintiffs look for support.

loading the individualized damage determinations which ordinarily would be reserved until later in the proceedings.[5]  To properly define the class as Plaintiffs propose it, the Court would be required to determine on a person-by-person basis whether property damage had occurred and whether LG&E was responsible, which would seem to completely subsume the merits phase of the case into the class certification phase.  This approach has little to recommend it, and runs contrary to the admonition that a class definition "should avoid . . . terms that depend on resolution of the merits."  Manual for Complex Litigation (Fourth) § 21.222 (2004); *see also, e.g.*, *Eversole v. EMC Mortgage Corp.*, 2007 WL 1558512 *5 (E.D. Ky. May 29, 2007) (finding "unworkable" a class definition where "[o]nly after completing individual decisions on the merits could any class be identified"); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995) (finding inappropriate a proposed class definition that would require the court, in determining class membership, to "address[] the central issue of liability to be decided in the case . . . . [and] would essentially require a mini-hearing on the merits of each case").

All of these considerations flaw Plaintiffs' proposed class definition and their case for class certification at its threshold.   But as it did in *Brockman* given that proper class definition is not made an explicit stand-alone requirement by the text of Rule 23, the Court will proceed to consider the enumerated factors of Rule 23(a) and the additional requirements of Rules 23(b)(2) and (3).  Throughout this analysis, the ramifications of Plaintiffs' improper class definition will be evident.

---

[5] Plaintiffs repeatedly urge the Court *not* to view individual damage determinations as relevant to class certification.  *See, e.g.*, Plaintiffs' Memorandum in Support of Motion for Certification of Class Action at 16, 22–24, 29–30.  Usually, the potential for individualized damage determinations is not an impediment to class certification.  But by making such individualized determinations a component of their proposed class definition, Plaintiffs make the Court's ability to determine class membership difficult and perhaps not "administratively feasible."

B.

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1079.  Nonetheless, while "the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950. 966 (6th Cir. 2005) (quoting *McGee v. E. Ohio Gas Co.,* 200 F.R.D. 382, 389 (S.D. Ohio 2001)).

As this Court has noted, "numerosity . . . is inextricably bound up in the question of class definition." *Paulley v. Chandler*, 2000 WL 33975579 *1 (W.D. Ky. April 18, 2000).  Therefore, a flawed class definition can make it difficult to determine whether a class defined by geographical boundaries satisfies the numerosity requirement.  Several courts faced with overbroad proposed classes have rejected plaintiffs' numerosity arguments on these grounds. For example, in *Duffin*, after rejecting the proposed class definition as "arbitrarily drawn", the court dispensed with the plaintiffs' numerosity claim since there was no evidence to show contamination throughout the proposed class area.  2007 WL 845366, at *5.  Similarly, despite the fact that 65 individuals had signed fee arrangements with attorneys in an action alleging damage from methane contamination, a district court found that since most of the plaintiffs resided in a confined section of the total proposed class area, the plaintiffs had not provided sufficient evidence that their class satisfied the numerosity requirement.  *Dippery v. Amoco Prod. Co.*, 1995 WL 478948 at *2 (D.N.M. April 21, 1995).

Here, the proposed class would include "at least 14,294" Plaintiffs.  Plaintiffs' Motion for Class Certification at ¶ 3.  If all 14,294 belong in the class, the Court would find that Plaintiffs

12

have easily met the numerosity requirement, since even a much smaller class could satisfy this

requirement.  *See Senter*, 532 F.2d at 522–23.  However, for reasons noted above it is unclear

how many of these 14,294 individuals properly belong in the class.  Some 72 Plaintiffs are

named, and Plaintiffs indicate this total could grow to 113.[6]  Plaintiffs' Memorandum in Support

of Motion for Certification of Class Action at 19.  A more sufficiently justified class definition

properly encompassing such numbers seems quite likely to meet the numerosity requirement,

and therefore the Court will not deem these deficiencies a barrier to class certification at this

time.

C.

The commonality requirement of Rule 23(a) generally will be satisfied where there is a

"single issue common to all members of the class."  *In re Am. Med. Sys.,* 75 F.3d at 1080.  The

requirement seeks only identification of  "a common issue the resolution of which will advance

the litigation."  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  Here,

Plaintiffs assert that common issues of fact include:

> (1)  the cause of Defendant's emissions; (2) whether Defendant's
> emissions were foreseeable; (3) were there any precautions
> Defendant could have taken to have prevented the emissions; (4)
> whether Defendant exercised any available precautions to prevent
> the emissions; (5) the amount of Exemplary Damages the Plaintiff
> Class is entitled to from Defendant; and (6) the type of economic
> impact Defendant's emissions had upon the Plaintiff class.

Plaintiffs' Memorandum in Support of Motion for Certification of Class Action at 21.

According to Plaintiffs, the common questions of law include whether Defendant is liable for

---

[6]At oral argument, Plaintiffs' counsel also referred to some 488 families wishing to join Plaintiffs' action.

13

nuisance, negligence, gross negligence, trespass, or strict liability, whether the proposed class is entitled to exemplary damages, and whether the proposed class is entitled to injunctive relief. *Id.* The Court does not necessarily accept Plaintiffs' assertion that "[t]he actions sought to be challenged by Plaintiffs are not dependent upon any case by case analysis." *Id.* at 20. Nevertheless, without finding that *all* of the issues noted above would be common to all class members and given that Plaintiffs have identified several questions of law and fact that ostensibly lend themselves to adjudication on a classwide basis, the Court finds that Plaintiffs meet the requirements of Rule 23(a)(2).

D.

A plaintiff's claim may be considered typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.* 75 F.3d at 1082. The representative plaintiffs' interests should be aligned with those of the proposed class, such that "as goes the claim of the named plaintiff, so go the claims of the class," *Sprague,* 133 F.3d at 399, and "in order to find typicality and commonality, the precise nature of the various claims must be examined . . . . the typicality requirement is not met if the named plaintiffs do not represent an adequate cross-section of the claims asserted by the rest of the class." *Reeb v. Ohio Dept. of Rehab. & Corr.*, 435 F.3d 639, 644–45 (6th Cir. 2006).

Here, it cannot be said that the proposed representative Plaintiffs represent "an adequate cross-section" of the proposed class. This is so largely because their geographic concentration makes it unlikely in the absence of any supporting evidence that their property damage claims would be "typical" of those that might be brought by individuals elsewhere in the sizeable

14

proposed class area.  Other members of the proposed class appear to live in areas subject to completely different influences, meaning that the factual and legal issues of other proposed class members' claims, or even claims by various subgroups of class members against LG&E could "differ dramatically from one . . . to the next." *See Daigle*, 133 F.R.D. at 600; *Boring v. Medusa Portland Cement Co.*, 63 F.R.D. 78, 84–85 (M.D. Pa. 1974) (finding that differences among a geographically dispersed class and "the very nature of the claims make a single finding of liability impossible").  This stands in contrast to the situation in, for example, *Boggs*, where the district court noted that "[t]he harm suffered by the named plaintiffs may differ in *degree* from that suffered by other members of the class so long as the harm suffered is of the same *type*," *Boggs*, 141 F.R.D. at 65 (emphasis added), and to *Olden*, where "the defendant [did] not allege that the toxins from [other] sources are indistinguishable from the toxins from [its] plant" and the class was able to "show that their properties were frequently covered by cement dust," a contaminant directly attributable to the defendant.  *Olden*, 383 F.3d at 508, 509 n. 5.  In short, typicality concerns are significantly reduced where a court can be assured that whatever tort occurred (if any) was potentially the result of the named defendant's activities.  Here no such assurance has been provided.

The Court recognizes that differences in amount or apportionment of damages alone will not defeat typicality, but here the significant gaps in Plaintiffs' proffered evidentiary showing make it impossible for the Court to conclude whether the proposed representatives are "typical" of the class they purport to represent.

E.

15

The adequacy of representation inquiry under Rule 23(a)(4) seeks to discover conflicts of interest between named representatives and the class they seek to represent, s*ee Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 625-26 (1997)*,* and "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).  As the Supreme Court has noted, "[t]he adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem*, 521 U.S. at 626 n.20 (quoting *Falcon*, 457 U.S. at 157 n.13). The adequacy evaluation also takes into consideration the competency and conflicts of class counsel.  *Amchem,* 521 U.S. at 626 n.20 (citing *Falcon*, 457 U.S. at 157–58 n.13).

Here the adequacy determination is complicated because Plaintiffs have voluntarily foregone their original personal injury claims.  *Burkhead v. Louisville Gas & Elec.*, No. 06-282 (W.D. Ky. June 6, 2007).  Thus while Plaintiffs wish to pursue *property damage* claims on behalf of the entire proposed class, they also wish to impose upon the entire proposed class their decision to give up any personal injury claims that could be asserted against LG&E.  Under Kentucky law, absent class members would be barred from later asserting such claims, *Yeoman v. Commonwealth Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998), which creates what some courts have identified as an inability on the part of the proposed class representatives adequately to protect the interests of absent class members.  *See, e.g., Martin v. Home Depot, U.S.A., Inc.*,

16

225 F.R.D. 198, 203 (W.D. Tex. 2004); *In re. MTBE Prods. Liab. Litig.*, 209 F.R.D. 323, 340 (S.D.N.Y. 2002); *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 550–51 (D. Minn. 1999).

Certain state courts have suggested "a wide array of options" to assuage concerns about the adequacy of a proposed class. These "options" include "limit[ing] the class issues to liability . . . and allow[ing] each class member to use that judgment as a basis for an individual action to recover damages for the breach," as well as "divid[ing] the class into subclasses," and finally "us[ing] the class notice procedure to give those class members with [personal injuries] the opportunity to opt out of the class." Plaintiffs' Reply at 8 (citing *Hicks v. Kaufman & Broad Home Corp.*, 107 Cal. Rptr. 2d 761, 775 (Cal. Ct. App. 2001)). However, the Court questions an argument which appears to shift the responsibility for resolving any infirmities in the proposed class definition from Plaintiffs onto the Court. The Court does not have a sufficient basis for redrawing or refining the proposed class.

Plaintiffs' own options do not satisfy the potential inadequacies of their proposed class. Their first suggestion pertains to individualized damage determinations, which are not an impediment to certification anyway. Plaintiffs' second suggestion leaves unclear how creating subclasses would allow absent class members' foregone claims to be asserted later. And finally, in a (b)(2) class, as Plaintiffs have requested here in addition to a (b)(3) class, no opt-out rights are ordinarily available for absent class members.[7]

---

[7] In support of a different aspect of their argument for certification Plaintiffs have cited a case in which a court in the Sixth Circuit exercised its discretion under Rule 23 to certify a (b)(2) class *with* opt-out rights for class members. *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 602–05 (E.D. Mich. 1998). Though this approach is not without support in other jurisdictions, *id.* at 604, it has the potential to dramatically expand the scope of Rule 23(b)(2) beyond the scope seemingly permitted and intended by the absence of notice and opt-out requirements, and therefore this Court would be extremely reluctant to adopt it here. *See, e.g., Day v. NLO*, 851 F. Supp. 869, 885–86 (S.D. Ohio 1994) (Noting that Rule 23(b)(2)'s lack of an opt-out requirement indicates certification under that provision should be "narrowly drawn").

In short, the Court's analysis of the proposed class representatives raises questions that "the interests of the class members will be fairly and adequately protected in their absence," *Amchem*, 521 U.S. at 626 n.20 (quoting *Falcon*, 457 U.S. at 157 n.13 (1982)).

IV.

In addition to meeting the four requirements of Rule 23(a), a proposed class must meet at least one of the requirements of Rule 23(b).  Here, Plaintiffs have requested certification under Rule 23(b)(2) as well as under Rule 23(b)(3).

Certification under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  The drafters of the Rule explained that this provision "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  Fed. R. Civ. P. 23(b)(2) advisory committee's note; *see also Reeb*, 435 F.3d at 647. As the Fifth Circuit has explained, the Advisory Committee's note indicates that:

> monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief.  By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief . . . . such damages should at least be capable of computation by means of objective standards *and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances*.  Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex determinations.

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (internal citations omitted) (emphasis added); *see also Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 448 (6th

18

Cir. 2002) (citing *Eubanks v. Billington*, 110 F.3d 87, 95 (D.C. Cir. 1997), for the proposition that "the underlying premise of (b)(2) certification–that the class members suffer from a common injury that can be addressed by classwide relief–begins to break down when the class seeks to recover . . . forms of monetary damages to be allocated based on individual injuries.").  The Sixth Circuit has noted potential problems inherent in certifying (b)(2) classes "where monetary damages are at issue," since in such situations the notice and opt-out protections present in the (b)(3) context are not required, yet the concerns motivating the imposition of those protections, such as the risk of unfairly and involuntarily binding those with "disparate intentions and motivations" as to monetary damages to a classwide judgment, are pronounced.[8]  *Reeb,* 435 F.3d at 647 (citing *Allison,* 151 F.3d at 413).  Thus, as a general rule, a court should not certify a (b)(2) class where individual monetary damage issues may well predominate.

        In *Olden*, a case upon which Plaintiffs rely heavily, a (b)(2) class defined as "all owners of single family residences in the City of Alpena[, Michigan] whose property was invaded by toxic pollutants and contaminants which originated from Defendant's facility," was certified. 203 F.R.D. at 268.  However, this Court does not find the *Olden* court's (b)(2) analysis or lack thereof, nor the Sixth Circuit's affirmation, to be particularly persuasive.  The district court appeared satisfied by the mere existence of a request for injunctive relief and limited its analysis to the text of Rule 23(b)(2), stopping short of inquiring whether injunctive or monetary relief would predominate as the Advisory Committee notes and other courts, including the Sixth Circuit, seem to require.  Those courts and the Advisory Committee notes flesh out when

_____

        [8]As noted above, such concerns could be lessened by allowing class members to opt out of a (b)(2) class, as in *Fuller*, 168 F.R.D. 588.  But as it indicated earlier, the Court views the individualized concerns to which the *Fuller* court responded by allowing for opt-out rights more appropriately addressed by not certifying a class under Rule 23(b)(2) in the first place.

injunctive relief is "appropriate," and frame the requisite inquiry in a manner which *Olden* seemingly ignored.

The Sixth Circuit admittedly evinced a reluctance to conduct a rigorous 23(b)(2) inquiry on appeal, but did so largely because the proposed class qualified for certification under Rule 23(b)(3). *Olden,* 383 F.3d at 510-11 ("we do not believe that the defendant's argument [that individualized money damages overwhelm the plaintiffs' request for injunctive relief] makes much sense given that the district court has granted certification under both 23(b)(2) and 23(b)(3)"). In fact, the Sixth Circuit explicitly distinguished cases in which courts "certified the class *only* under 23(b)(2), not also under 23(b)(3)," such as *Coleman*. *Id.* at 511. Additionally, as noted above, the Sixth Circuit's reviewed the district court's (b)(2) certification decision on an abuse-of-discretion standard. *Id.* at 508. Quite simply, *Olden* properly demonstrates the latitude district courts have in making their certification decisions, but does not dictate a particular result here.

Here Plaintiffs cannot as easily avoid a searching (b)(2) analysis by claiming that "the Rule 23(a) prerequisites have been met," *id.* at 510–11 (citing 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1775 (2d ed. 1986)), nor can they claim that their case is as readily distinguishable from *Coleman* as was the *Olden* plaintiffs' case. Plaintiffs seek various types of relief, including compensatory damages and "any and all further relief, including equitable relief," and what is clear is that the monetary damages Plaintiffs seek are more than "incidental," making the concerns about (b)(2) certification noted in *Allison*, *Coleman*, and *Reeb* more compelling. As in *Brockman*, Plaintiffs' complaint is similar to that considered in *In re Sch. Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986), where the Third Circuit affirmed a district

20

court's decision to deny 23(b)(2) certification of a nationwide class alleging, among other things, negligence, strict liability, and intentional tort based on exposure to hazardous materials.  The *In re Sch. Asbestos Litig.* plaintiffs sought "mandatory injunctive relief" as well as money damages. The Third Circuit agreed with the lower court's conclusion that "despite the plaintiffs' ingenuity the claims in this suit were essentially for damages."  This Court does not adopt the Third Circuit's seemingly overbroad view that "an action for money damages may not be maintained as a Rule 23(b)(2) class action," *id.*, since "incidental" monetary damages may be appropriate in a (b)(2) class action.  But this Court takes a similar view of Plaintiffs' motion as the *In re Sch. Asbestos Litig.* court took of the complaint before it, and cannot find that the requested injunctive relief predominates over the requested monetary relief.  At bottom, the requested individualized monetary relief will predominate, and thus (b)(2) certification would be inappropriate.

V.

Certification under Rule 23(b)(3) is appropriate when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) classes therefore must satisfy a two-part test of commonality and superiority, and should only be certified if doing so would "achieve economies of time, effort, and expense."  *Sterling,* 855 F.2d at 1196; *see also Amchem*, 512 U.S. at 615.  The Sixth Circuit has provided further guidance on what sorts of cases may be best suited to (b)(3) class adjudication:

> In complex, mass, toxic tort accidents, *where no one set of operative facts establishes liability*, no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues, the district court

21

> should properly question the appropriateness of a class action for
> resolving the controversy.  However, where the defendant's
> liability can be determined on a class-wide basis because the cause
> of the disaster is a single course of conduct *which is identical for
> each of the plaintiffs*, a class action may be the best suited vehicle
> to resolve such a controversy.

*Sterling,* 855 F.2d at 1197 (emphasis added); *see also In re Am. Med. Sys.*, 75 F.3d at 1084; Rule

23(b)(3) advisory committee's note.  In contrast to Rule 23(a)'s commonality requirement,

discussed above, Rule 23(b)(3)'s "predominance criterion is far more demanding."  *Amchem*,

521 U.S. at 624 (holding that certification of a (b)(3) class on the basis of an "overarching

dispute about the health consequences of asbestos" alone was inappropriate, given the "greater

number of questions peculiar to" the individual class members).

To be sure, a need for individualized damage determinations is not fatal to (b)(3)

certification.  *See, e.g., Olden*, 383 F.3d at 509; *In re Am. Med. Sys.*, 75 F.3d at 1084; *Sterling*,

855 F.2d at 1197.   As noted in *Brockman*, courts often bifurcate class action proceedings,

adjudicating liability on a classwide basis, and then "if liability is found, the issue of damages

can be decided by a special master or by another method."  *Olden,* 383 F.3d at 509; *see also In re

Sch. Asbestos Litig.*, 789 F.2d at 1010.

Here, as in *Brockman*, the question is whether common factual and legal questions

predominate, that is, whether any individualized questions relate solely to the amount of

damages potentially owed to each class member.  Yet just as in *Brockman*, despite their repeated

invocation of *Sterling*, Plaintiffs have failed to provide evidence that "the defendant's liability

can be determined on a class-wide basis."  *Sterling*, 855 F.2d at 1197.  Plaintiffs have alleged

that Defendant's operations result in extensive emissions, but what remains missing is any

evidence that the *cause* of the entire class's damages could be determined in a single proceeding.

22

A comparison to *Olden* illustrates the problem: there the Sixth Circuit proceeded under the belief that the toxins emitted by the defendant were distinguishable from those emitted by "other industrial sources" nearby. *Olden*, 383 F.3d at 508.[9] That is, the *Olden* defendant's plant was assumed to be the sole source of any damage the class members suffered, so a causation determination as to one class member could be extrapolated to all and the defendant's tort liability could be adjudicated on a classwide basis. *See also, e.g., Sterling*, 855 F.2d 1188. As noted above, similar aspects of their respective proposed class definitions distinguish *Cook*, in which a (b)(3) class defined by a "plutonium contour" was certified, and *Wehner*, in which a (b)(3) class limited to "confirmed dioxin sites" was certified.

Plaintiffs have noted examples of courts giving less weight to such concerns, as in the unpublished certification decision in *Stanley v. U.S. Steel Co.*, 2006 WL 724569 (E.D. Mich. March 17, 2006), where Judge Cohn rejected a steel mill's arguments that multiple sources of pollution and geographic dispersion of the proposed class members precluded (b)(3) certification. However, it is noteworthy that in his opinion Judge Cohn referred to courts' ability to be "quite liberal in certifying a class," *id.* at *7, and that he took what can only be described as a narrow view of what issues pertained to the "liability" he ultimately felt could be adjudicated on a classwide basis. This approach stands in contrast to the many factually similar cases in which courts have shown greater solicitude for the impact of individualized causation issues. *See, e.g., Boring*, 63 F.R.D. at 84–85 (noting that a geographically-dispersed class alleging air

---

[9]Notably, the Sixth Circuit alluded to concerns about individualized causation determinations in *Olden*, going so far as to discuss *Reilly*, in which such concerns precluded the district court from certifying a (b)(3) class. *Olden*, 383 F.3d at 510. Yet without much explanation beyond apparent reassurance taken from the fact that causation problems would be "immediately apparent to the district court" given that other possible causes of the contamination were also before the same judge in separate actions, *id.* at 508 n.4, the Sixth Circuit asserted that *Olden* did not present "the same level of individual determination" as in *Reilly*. *Id.* at 510.

pollution for which more than one entity might be responsible would face "considerable evidentiary problems . . . . [T]he very nature of the class makes a single finding of liability impossible"). Here, the Court has been given no evidence that a classwide determination of liability on any of Plaintiffs' theories would be possible.

To prove their trespass claim, for example, Plaintiffs must show "an intrusion (or encroachment) which is an unreasonable interference with a property owner's possessory *use* of his/her property." *Smith v. Carbide & Chems. Corp.*, 226 S.W.3d 52, 57 (Ky. 2007). And a nuisance "arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage." *Smith v. Carbide & Chems. Corp.,* 2007 WL 3225419 at *6 (6th Cir. Nov. 2, 2007) (citing *City of Somerset v. Sears*, 233 S.W.2d 530, 532 (Ky 1950) (quoting 39 Am Jur. *Nuisances* § 2)). The Court has searched Defendant's extensive submissions in vain for any evidence–a report, test, or anything else–from which Plaintiffs propose to show liability on a classwide basis. Yet as in *Brockman, Boring,* and elsewhere, the critical evidence of causation as to either claim, or as to the remainder of Plaintiffs' claims, is to be based upon highly individualized testimony. Thus, the Court cannot be assured that Defendant's liability to the class will be a common question or that a class action would be the superior method of adjudicating Plaintiffs' claims. As elsewhere throughout the Rule 23 analysis, the Court is again confronted with the infirmities of the class definition, and therefore the Court finds that Plaintiffs do not satisfy Rule 23(b)(3).

VI.

24

As was the case in *Brockman*, Plaintiffs have pointed to a variety of mass environmental tort cases in which courts have certified classes, often ones alleging contamination via air pollution. Plaintiffs' Memorandum in Support of Motion for Certification of Class Action at 17. Plaintiffs correctly observe that "[t]he principles for certification . . . set forth in *Sterling* have been applied consistently" in certifying such cases. However, this observation is of minimal persuasiveness, given the significant differences between the evidence supporting most of those proposed classes and that supporting the one proposed here. One could suggest in good faith, as Plaintiffs have, that this Court has the discretion to certify a class even where no evidence defines the precise nature and scope of the torts allegedly committed by Defendant. Indeed, some courts, adopting such a view, have done so based upon what this Court perceives as a less-than-rigorous analysis.

Whether certification here might fall just within the broad parameters of the Court's discretion is not precisely the question. Rather, it is whether employing the class action mechanism in this situation would achieve the "significant judicial economies" for which it is designed. 1 Alba Conte & Herbert Newberg, *Newberg on Class Actions,* § 1:1, at 3 (4th ed. 2002). Plaintiffs bear the burden of producing something more than their wholly subjective belief that their property is affected by Defendant's emissions and that all those in a two-mile radius must be similarly affected. Quite simply, Plaintiffs' strenuous arguments that mass environmental tort accidents are usually suitable for class action adjudication are beside the point until Plaintiffs demonstrate that a defined class has similarly experienced a mass environmental tort of some kind.

25

Upon repeated reexamination of the record, the Court finds a substantial amount of relatively uncontroverted evidence indicating that (a) Defendant, as part of its electrical generation operations, emits various pollutants into the atmosphere, and (b) Plaintiffs, a geographically concentrated group living relatively close to Defendant's plant (as well as facilities operated by other companies) have some sort of substances and noxious odors on their property.  Rule 23 exists precisely to ensure that class certification is based upon something more than the generalized assumptions as to the sizeable proposed class area that this information could support.  Plaintiffs have quite simply failed to carry their burden of satisfying the requirements of Rule 23 with regard to the class they have proposed, and as such the Court cannot properly conclude that certification of the proposed class is appropriate.

The Court will issue an order consistent with this Memorandum Opinion.

cc:     Counsel of Record